**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 17-43-DLB**

**DENNIS L. SIMPKINS**                                                                            **PLAINTIFF**


**vs.**                                          **MEMORANDUM OPINION & ORDER**


**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                              **DEFENDANT**

                                     **\*\*\*   \*\*\*   \*\*\*   \*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby affirms the decision of the Commissioner.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Dennis Simpkins originally filed an application for Disability Insurance Benefits ("DIB") on December 28, 2012. (Tr. 94). In a decision dated February 28, 2014, Administrative Law Judge ("ALJ") Scott Shimer denied Plaintiff's application. (Tr. 91-105). On September 5, 2014, Plaintiff protectively filed a new application for SSI, alleging disability beginning on April 10, 2012. (Tr. 25, 202). Specifically, Plaintiff alleged that he is unable to work due to severe post-traumatic stress disorder ("PTSD"), traumatic brain injury, ringing of the ears, arthritis, degenerative disc disease, walking with a cane, and anger issues. (Tr. 235).

Plaintiff's application was denied initially and again on reconsideration. (Tr. 144, 152). At Plaintiff's request, an administrative hearing was conducted on April 12, 2016, before ALJ Jonathan Stanley. (Tr. 41-90). On May 16, 2016, ALJ Stanley ruled that Plaintiff was not entitled to disability benefits. (Tr. 22-40). This decision became final when the Appeals Council denied Plaintiff's request for review on January 13, 2017. (Tr. 1-6). Plaintiff filed the instant action on January 27, 2017. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 14 and 17).

## II.    DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to

reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 10, 2012. (Tr. 27). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with lumbago, degenerative joint disease of the knees, mood disorder and post-traumatic stress disorder. (Tr. 27). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 29).

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity ("RFC") to perform light work with the following limitations:

[H]e cannot climb ropes, ladders and scaffolds and can no more than occasionally climb stairs and ramps, balance, stoop, kneel, crouch or crawl. The claimant can perform simple routine repetitive job tasks and detailed job tasks, but cannot make executive decisions. He can manage and tolerate infrequent changes in the workplace routine and can interact frequently with supervisors and occasionally with coworkers, but cannot tolerate contract with the general public.

(Tr. 30). Based upon this RFC, the ALJ concluded that Plaintiff was not able to perform his past relevant work. (Tr. 35). Accordingly, the ALJ proceeded to Step Five, and found that considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 35). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the date of Plaintiff's application through the date of the decision. (Tr. 36).

### C. Analysis

Plaintiff alleges three errors in the hearing decision and asks this Court to reverse the disability determination. Specifically, Plaintiff argues that the ALJ erred in failing to properly address the medical necessity of his use of a cane, erred in finding that he had not experienced a material change in his mental impairments, and erred in evaluating his disability determination from the Department of Veterans Affairs ("VA"). (Doc. # 15 at 7, 9, and 13). Each of Plaintiff's arguments is influenced by Plaintiff's claim that the ALJ erred in applying *Drummond*.

The Sixth Circuit has established that "the principles of res judicata can be applied against the [SSA] Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination

4

absent changed circumstances." *Id.* Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* (citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)); *see also Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam) (holding that a second ALJ was precluded from reconsidering whether a plaintiff could perform his past relevant work).

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing states within the Sixth Circuit to follow *Drummond* by applying *res judicata* to a prior assessment of a claimant's residual functional capacity as well as other findings required in the sequential evaluation process for determining disability. This Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the undadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29,771-01 (Jun. 1, 1998). Accordingly, a prior ALJ's RFC determination must not be altered unless new and material evidence is presented showing that the plaintiff's condition has significantly changed. *See Drummond*, 126 F.3d at 842. The plaintiff bears the burden of showing that his condition has worsened to the point that he is no longer able to perform substantial gainful activity. *Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (unpublished) (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

Here, the ALJ considered the new evidence presented by Plaintiff, and concluded as follows:

> New medical evidence, which consists of VA records from January 10, 2014 through April 1, 2015, Georgetown Community Hospital records from March 17, 2014 through May 21, 2014, KORT physical therapy records from May 2014, and report of psychological evaluation on October 20, 2014, does not support different limitations than previously found by an Administrative Law Judge; thus, the prior finding of residual functional capacity is adopted herein.

(Tr. 32). Plaintiff disagrees, arguing that the new evidence does, in fact, support a finding that his condition has substantially worsened. Specifically, Plaintiff takes issue with the ALJ's determination as it relates to his use of a cane, mental impairments, and VA disability rating.

### 1. The ALJ did not err in finding that Plaintiff's use of a cane was not medically necessary

First, Plaintiff argues that there is new and material evidence to support his claim that his use of a cane is medically necessary, and that the ALJ erred in not considering the use of a cane as part of his RFC determination. (Doc. # 15 at 7). The record belies this assertion.

"[T]he Sixth Circuit has held that if a cane is not a necessary device for the claimant's use, it cannot be considered a restriction or limitation on the plaintiff's ability to work." *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013) (citing *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002)). "This device must be so necessary that it would trigger an obligation on the part of the Agency to conclude that the cane is medically necessary." *Id.* "A cane would be medically necessary if the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane." *Id.*

The record does not contain any evidence that Plaintiff is *required* to use a cane. The ALJ observed that Plaintiff used a cane when walking in for the hearing, and referenced treatment notes in which a doctor recommended an adjustable cane, because the one Plaintiff was using was "too tall." (Tr. 32). But nothing in the record supports Plaintiff's claim that cane is medically necessary. Plaintiff does not point to any instance of a physician prescribing a cane, or stating that Plaintiff needed a cane. Instead, the record contains a recommendation for a "one-fourth inch lift for the [Plaintiff's] right shoe … because of leg length discrepancy." (Tr. 32). Thus, if a physician had recommended that Plaintiff use a cane, that recommendation should be contained in the medical records.

Moreover, the physical limitations that might cause Plaintiff to need a cane were only found to be "mild." (Tr. 32). An x-ray taken in February 2014 of Plaintiff's left knee "was normal and MRI of the left knee showed mild chondromalacia but no other abnormality" and an x-ray of the lumbar spine in July 2014 "showed no abnormality." *Id.* Similarly, an MRI of the lumbar spine in February 2015 showed "mild degenerative disc disease." *Id.* Accordingly, substantial evidence supports ALJ Stanley's determination that a cane was not medically necessary. Therefore, the ALJ did not err in failing to consider Plaintiff's use of a cane as a restriction or limitation on his ability to work.

### 2. The ALJ did not err in finding that Plaintiff's mental impairments had not substantially worsened

Next, Plaintiff claims that the ALJ erred in applying *Drummond* to his mental impairments. Specifically, Plaintiff contends that the ALJ erred in evaluating his traumatic brain injury ("TBI"), did not consider some of his cognitive testing scores, overlooked his

problems with anger management and concentration, and gave too little weight to the opinion of Dr. Sprague. The Court will consider each argument in turn.

First, Plaintiff's claim that the ALJ erred in evaluating his TBI is not supported by the record. At step two of the analysis, ALJ Stanley found that Plaintiff's TBI had not substantially increased in severity, and thus, did not alter ALJ Shimer's finding that TBI was not a severe impairment. Plaintiff complains, however, that ALJ Stanley erroneously relied on opinions from state agency reviewers, because those reviewers lacked evidence of his most recent MRI. However, the record reflects that the February 2014 MRI was included with the records submitted to the state agency reviewers in December 2014. (Tr. 477). Moreover, ALJ Stanley also relied on other evidence, including "[t]reatment records show[ing] diagnosis in November 2014 of '[m]ild TBI by history … possible mild cognitive deficits in context of inconsistent testing.'" (Tr. 28). ALJ Stanley also considered Plaintiff's TBI at step four of the analysis. There, he noted that "VA records show that cognitive test results … that indicated possible moderate cognitive/communication deficit, consistent with traumatic brain injury eleven years previously, were not reliable due to the claimant's lack of effort." (Tr. 34). Accordingly, ALJ Stanley's determination that Plaintiff's TBI had not "substantially worsened" since the time of his prior decision was supported by substantial evidence.

Next, Plaintiff's claim that the ALJ did not consider certain pieces of evidence, or overlooked certain symptoms, is refuted by the record. The ALJ specifically considered Plaintiff's anger management and concentration issues, as well as his cognitive testing scores. At step four of the analysis, ALJ Stanley noted that Plaintiff "reported problems with anger," but had "reported to a treating psychologist that he was coaching soccer and

that he 'really enjoys it, and wife keeps an eye on his temper,'" and that he had "attended anger management group sessions in April and May 2014." (Tr. 32). The ALJ also observed that Plaintiff "complained of problems with memory," and that "[t]ests of attention and concentration showed borderline impaired or impaired performance." (Tr. 33). However, the ALJ also noted Dr. Carbary's opinion that "[v]alidity measures for cognitive tests preclude interpretation of test results," and "validity measures given separately or imbedded in memory testing showed results impossible to obtain under usual effect circumstances." (Tr. 33). Additionally, the ALJ relied on Dr. Anderson's opinion that "[w]hile [Plaintiff] claims a high degree of impairment from these symptoms, the record lacks supportive evidence" and that Plaintiff's PTSD "appear[ed] to result in moderate degree of impairment." (Tr. 33). Moreover, in 2015, Plaintiff "reported that he had been successful in controlling his anger, and a social worker observed normal judgment, appropriate mood and normal memory." (Tr. 34). Thus, ALJ Stanley's detailed analysis reveals that he did not "overlook" or fail to consider Plaintiff's anger issues, memory issues, or cognitive testing results.

Finally, Plaintiff takes issue with the weight that ALJ Stanley gave to Dr. Sprague's assessment. However, because Dr. Sprague examined Plaintiff only once, he was a "non-treating" source. 20 C.F.R. § 404.1527. As a non-treating source, Dr. Sprague's opinion was not entitled to controlling weight. *See id.* The ALJ explained that he gave little weight to Dr. Sprague's opinion, not only because Dr. Sprague was a non-treating source, but also because his findings were not consistent with the findings made by treating sources. (Tr. 32). Therefore, the ALJ did not err in giving less weight to Dr. Sprague's opinion.

In sum, each of Plaintiff's complaints relating to specific evidence ALJ Stanley considered regarding his mental impairments is without merit. Accordingly, substantial evidence supports ALJ Stanley's determination that Plaintiff's mental impairments have not substantially worsened since the time of ALJ Shimer's initial decision. Therefore, ALJ Stanley did not err by adhering to ALJ Shimer's prior determination.

### 3. The ALJ properly considered the VA disability determination

The Sixth Circuit has held that a disability rating from the Veterans Administration is entitled to consideration. *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984). However, it has not specified how much weight should be given to such a determination by an ALJ determining social security disability eligibility. *Id.* The Social Security Administration has set forth the following rule:

> A decision by … any other governmental agency about whether you are disabled … is based on its rules and is not our decision about whether you are disabled …. We must make a disability … determination based on social security law. Therefore, a determination made by another agency that you are disabled … is not binding on us.

20 C.F.R. § 404.1504.[1] In recent, unpublished decisions, the Sixth Circuit has continued to follow the rule that an ALJ is not *bound* by a VA disability determination, but that they must *consider* it. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510-11 (6th Cir. 2013); *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 387-88 (6th Cir. 2013).

Here, ALJ Stanely did consider the VA's disability and employability determination. He referenced the decision contained in the record, and explained that "[t]his opinion has

---

[1] This rule was recently revised, and now states that "in claims filed … on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency … about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency … decision that we receive as evidence in your claim …." 20 C.F.R. § 404.1504.

been considered, but no weight is given to the VA opinion that [Plaintiff] is unemployable because that is the ultimate issue reserved to the Commissioner when determining disability for purposes of Social Security disability." (Tr. 34) (citing 20 C.F.R. § 404.1504).

Furthermore, the only new evidence offered by Plaintiff is the VA determination letter stating that Plaintiff was *unemployable* as of December 2014. The initial VA determination—detailing how the VA determined that Plaintiff was 90% disabled—was considered in Plaintiff's initial application for DIB as part of ALJ Shimer's decision. (Tr. 97). ALJ Shimer concluded that, although Plaintiff had a 90% disability rating under the military standards for disability, the standard used for purposes of Social Security disability benefits produced a different result. *Id.* Under *Drummond*, ALJ Stanley was bound by ALJ Shimer's decision, absent evidence of a material change. The only evidence of a change offered by Plaintiff is the letter from the VA stating that he is "unemployable." However, Plaintiff's 90% disability rating from the VA remains unchanged. (Tr. 762). Thus, ALJ Stanley did not err in finding that the new VA employability decision should not alter his conclusion.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3)     Defendant's Motion for Summary Judgment (Doc. # 17) is hereby **GRANTED**; and

(4)     A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 31st day of August, 2017.



Signed By:
David L. Bunning     DB
United States District Judge

k:\data\socialsecurity\moos\lexington\17-43 simpkins moo.docx